UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIANA COATES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. G-10-71 |
| | § | |
| BRAZORIA COUNTY TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION DENYING PLAINTIFFS' MOTION FOR DISQUALIFICATION

Plaintiffs Diana Coates and Margo Green moved to disqualify the law firm of Rusty Hardin & Associates, P.C., from representing Defendant Brazoria County Juvenile Board in this matter. Plaintiffs' Motion is based on a meeting between the Hardin Firm and a prospective client who was a plaintiff in a lawsuit substantially related to, and involving the same defendants as, the current matter. After carefully reviewing the Motion, all responses and replies thereto, and the relevant law, the Court DENIES the Motion because Plaintiffs lack the requisite standing to raise this objection.

### I. BACKGROUND

This litigation arises out of allegations that James Blackstock, a former elected court-at-law judge for Brazoria County, sexually harassed and assaulted female employees of Brazoria County. Plaintiffs formerly worked as the Chief and Assistant Chief of the Brazoria County Juvenile Probation Department. They are

two of several current or former Juvenile Probation Department employees who filed claims against Blackstock, Brazoria County, and the Brazoria County Juvenile Board relating to Blackstock's alleged sexual misconduct.

Estella Christine Strawn is one of the other Juvenile Probation Department employees who filed claims related to Blackstock's conduct in a separate suit. Prior to retaining other counsel in that suit, Strawn consulted with members of the Hardin Firm "for several hours" "with a view to obtaining professional legal services." Pls.' Mot. for Disqual. 2. Strawn eventually settled with the Juvenile Board and obtained a favorable verdict against Blackstock, which is now on appeal before the Fifth Circuit.

Plaintiffs filed the instant lawsuit on March 1, 2010, and amended their Complaint on April 24, 2012 to add the Juvenile Board as a defendant. The Juvenile Board entered an appearance on May 21, 2012 through its current counsel, the Hardin Firm. Plaintiffs now argue that the Hardin Firm should be disqualified from representing the Juvenile Board due to certain conflict of interest provisions of the Texas Rules of Professional Conduct as applied through Fifth Circuit precedent. Notably, neither Strawn nor her counsel have appeared before this Court to consent or object to the Hardin Firm's representation of the Juvenile Board.

## II.     ANALYSIS

The ultimate issue before the Court is whether Plaintiffs have standing to assert that the Hardin Firm's representation of the Juvenile Board violates duties it owed to Strawn as a prospective client.

As Plaintiffs correctly point out in their Motion, the Fifth Circuit has made clear that "[a] former client seeking to disqualify an attorney who appears on behalf of his adversary need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 89 (5th Cir. 1976) (citation omitted).  The rule rests on the presumption that the client disclosed potentially damaging confidences to the attorney during the former representation. *Id.*; *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977).  Prospective clients, such as Ms. Strawn,[1] are also protected under the rule, but they are not afforded the presumption and must prove that the attorney "actually received confidential information which could now be used to [their] detriment." *B.F. Goodrich Co. v. Formosa Plastics Corp.*, 638 F.Supp. 1050, 1052–53 (S.D. Tex. 1986).  The rule aims to "aid the frank exchange between attorney and client" because the mere

---

[1] The Model Rules of Professional Conduct define a prospective client as a "person who discusses with a lawyer the possibility of forming a client-lawyer relationship." Model Rules of Prof'l Conduct R. 1.18 (2011).

perception that an attorney could use former clients' confidential information without their consent "will tend to undermine public confidence in the legal profession and the judicial process." *In re Yarn*, 530 F.2d at 89.

Nonetheless, "[t]hese considerations do not apply where the former client does not object to the seemingly adverse representation." *Id.* at 89. The Fifth Circuit in *In re Yarn* reasoned that public confidence in the judicial process would not be impaired "where the former client, having every opportunity to do so, fails to object" and "where the unethical nature of the attorney's change of sides is not manifest but would need to be shown." *Id.* at 90. Allowing an "unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." *Id.* Moreover, in the absence of an attorney–client relationship, the duties of loyalty and confidentiality embodied in the conflict of interest rules do not arise. *Id.*

Thus, the general rule is that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Id.* at 88. Under this general rule, Plaintiffs Coates and Green do not have standing to challenge the Hardin Firm's representation of the Juvenile Board because they have never had an attorney–client relationship with the Hardin Firm.

Nor do Plaintiffs qualify for the "at most, narrow exceptions to this general rule," where an ethical conflict is so "manifest and glaring" that it necessitates third-party standing. *Id.* at 89; *Clemens v. McNamee*, No. 4:08-CV-00471, 2008 WL 1969315, at *3 (S.D. Tex. May 6, 2008). Those "narrow exceptions" were contemplated in three specific cases—*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973); *Porter v. Huber*, 68 F.Supp. 132 (W.D. Wash. 1946); and *Empire Linotype Sch., Inc. v. United States*, 143 F.Supp. 627 (S.D.N.Y. 1956)— each of which is distinguishable from the instant case. *Clemens*, 2008 WL 1969315, at *3. *Emle Industries* involved a disqualification motion that was essentially made through the former client, and *Porter* and *Empire Linotype School* involved conflicts that were so manifest and glaring that the courts intervened or would have intervened if the adverse party had not moved.[2]

Plaintiffs' citation to *Abraham Constr. Corp.*, 559 F.2d 250, for the proposition that the Hardin Firm owed a duty to Plaintiffs is also inapposite. That case involved a joint defense of a conspiracy charge, where the counsel of each defendant is, in effect, the counsel of all for the purposes of invoking the attorney–

---

[2] *Emle Industries* involved a motion to disqualify that was made by a corporation which the former client controlled, and was therefore essentially made by the former client. 478 F.2d at 572–73. In *Porter*, the court, as opposed to a third party, challenged the attorney's change of sides where the defendant's attorney had previously been employed by the plaintiff in a legal capacity and was the superior of another attorney who had worked on the dispute that formed the basis of the case. 68 F.Supp. at 132. Finally, in *Empire Linotype School*, the plaintiff's attorney had previously prepared and reviewed documents for the defendant that were at the heart of the lawsuit. 143 F.Supp. at 631–32.

client privilege. *Id.* at 253. The Fifth Circuit held that when information is exchanged between various co-defendants and their attorneys, "an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants." *Id.* In other words, an attorney should be disqualified from proceeding "against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the [previous matter], and wherein *confidential exchanges of information took place* between the various co-defendants *in preparation of a joint defense*." *Id.* (emphasis added).

Plaintiffs in the instant case do not allege that any confidential exchanges took place between themselves and Strawn, let alone between themselves and the Hardin Firm, or that any joint prosecution arrangement existed between themselves and Strawn. Regardless, Plaintiffs fail to even prove that the Hardin Firm actually received confidential information from Strawn which could now be used to their detriment, as is required when no attorney–client relationship exists between the moving party and the allegedly conflicted attorney. *See id.*; *see also B.F. Goodrich Co.*, 638 F. Supp. at 1052–53 (requiring former prospective client to prove that the law firm it consulted actually received detrimental confidential information in order to prevail on disqualification motion). Accordingly, *Abraham Constr. Corp.* provides no grounds for third-party standing in this case.

Given that Plaintiffs lack standing to assert that the Hardin Firm's representation of the Juvenile Board violates duties it owed to Strawn as a prospective client, the Court need not reach the Juvenile Board's remaining arguments that the Board's interests are not materially adverse to Strawn's interests, or that Strawn waived the attorney-client privilege with respect to communications with the Hardin Firm.

### III.  CONCLUSION

For the reasons above, the Court DENIES Plaintiffs' Motion for Disqualification of Counsel for Brazoria County Juvenile Board (Docket Entry No. 134.)

SIGNED this 29th day of June, 2012.

_____
Gregg Costa
United States District Judge