UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIANA COATES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. G-10-71 |
| | § | |
| BRAZORIA COUNTY TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Diana Coates and Margo Green, former employees of the Brazoria County Juvenile Probation Department, originally filed this section 1983 and Title VII action against Brazoria County and James Blackstock, a former county court-at-law judge.  Plaintiffs alleged that Blackstock sexually harassed and assaulted them, while the County acquiesced and later retaliated against them for blowing the whistle.

In April 2012, more than two years after filing this case, Plaintiffs amended their Complaint to add as a defendant the Brazoria County Juvenile Board, an entity created by the Texas legislature and composed of the county judge, the district judges in Brazoria County, and the judge of each county court at law. Plaintiffs were concerned that the County would attempt to avoid liability by attributing any misconduct to the Board as a separate entity based on a recent Texas intermediate appellate court decision holding that the El Paso Juvenile

Probation Department was a separate governmental entity from El Paso County. *See El Paso Cnty. v. Solorzano*, 351 S.W.3d 577, 584 (Tex. App.—El Paso 2011, no pet.).

The Juvenile Board seeks to dismiss the new allegations on the ground that it does not have the capacity to be sued.  The Court agrees and therefore **GRANTS** the Juvenile Board's motion.

## I.   BACKGROUND

Coates and Green were the Chief and Assistant Chief, respectively, of the Brazoria County Juvenile Probation Department.  The Texas legislature created county juvenile probation departments to provide services in response to juvenile court orders—*e.g.*, protective services, prevention of delinquent conduct, foster care, and counseling—as well as services related to the operation of pre and postadjudication juvenile facilities.  *See* Tex. Hum. Res. Code Ann. § 142.001.  A juvenile probation department's specific responsibilities and functions, as well as its personnel policies, are generally left to the county juvenile board.  *See id.* § 142.002; 37 Tex. Admin. Code §§ 341.2–341.3.

While Plaintiffs claim that Blackstock harassed or assaulted nearly twenty women over his thirty-year legal career, Plaintiffs' regular interactions with Blackstock began in January 2007 when he became Chairman of the Juvenile Board.  According to Plaintiffs, Coates's relationship with Blackstock started as a

friendship, but gradually developed into one filled with crude innuendo and advances, pornographic emails, intimidation, unwanted physical sexual contact, and retaliation.  Plaintiffs allege that Blackstock subjected Green to similar conduct on several occasions.  Coates, on behalf of herself and Green, purportedly reported Blackstock's harassment to County Judge Jeri Mills—a member of the Juvenile Board and one of Plaintiffs' immediate supervisors—in February 2008 after Blackstock instructed them to attend a conference with him in Corpus Christi. Plaintiffs' claims are not limited to Blackstock's conduct; they extend to the County's and Juvenile Board's alleged "continued failure to prevent the harassment once it had been reported by them, as well as for the retaliation against them because they opposed the conduct, participated in the EEOC's enforcement proceedings, and exercised their rights of freedom of speech."  Docket No. 129 at 2.

The Juvenile Board's Motion to Dismiss does not implicate the substance of Plaintiffs' claims, but simply argues that the Board does not have the capacity to be sued.

## II.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). Whether a party has the capacity to sue or be sued is a legal question that may be decided at the Rule 12 stage. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1294 (3d ed. 2004).

## III.   DISCUSSION

"Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." 56 Am. Jur. 2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 736 (2012).   Under Federal Rule of Civil Procedure 17(b), the capacity of an entity such as the Juvenile Board "to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b).

The Texas Supreme Court has not specifically addressed whether the Brazoria County Juvenile Board, or any other juvenile board, is a suable entity. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 267 (5th Cir. 1996) ("Neither the statutory scheme nor the evidence presented in this case clarifies whether the Juvenile Board has the authority to sue or be sued in its own name . . . ."); *cf. Solorzano*, 351 S.W.3d at 580 (noting that "no Texas court of appeals has directly

addressed whether the El Paso Juvenile Probation Department is a separate entity apart from El Paso County" before ruling on such).  But it has explained what is necessary for any public entity to possess jural authority.  In *Texas Emp. Ins. Ass'n v. Elder*, it stated the "rule that a public administrative body cannot sue or be sued in the absence of statutory authority."  282 S.W.2d 371, 376 (Tex. 1955) (citations omitted) (holding that the Industrial Accident Board "is a public administrative body, created by statute, . . . , and possessing only such powers as are conferred upon it by statute"); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 334 (Tex. 2006) ("As a rule, a governmental entity without the power to sue and be sued cannot be a party in litigation.").

The Fifth Circuit has followed this approach when determining whether public agencies and department have the capacity to sue and be sued under Rule 17(b).  For instance, in holding that a police department lacked the capacity to be sued, the Fifth Circuit noted that "our cases uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself."  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991) (citing *Kirby Lumber Corp. v. Anacoco-Prairie State Game & Fish Comm'n ex rel. La.*, 293 F.2d 82, 83 (5th Cir. 1961); *Taylor v. Administrator of the Small Bus. Ass'n*, 722 F.2d 105, 110–11 (5th Cir. 1983); *J.C. Driskill, Inc. v.*

*Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990)); *see also Crull v. City of New Braunfels*, 267 F. App'x 338, 341 (5th Cir. 2008) (per curiam) (holding that a police department was not a distinct legal entity from the city because it had not been granted the power to sue or be sued).  The *Darby* court noted that the "touchstone under Texas law is whether the sued servient entity has been granted the capacity 'to sue and to be sued.'"  939 F.2d at 313 n.1 (citing *Fazekas v. Univ. of Houston*, 565 S.W.2d 299, 302 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.)).  Without such a grant of jural authority, the entity has no more of a separate legal existence than "the accounting department of a corporation."  *Id.* at 313 (citations omitted).

This requirement that a legislative body must have vested a public entity with jural authority has led district courts in Texas to find that the following public entities, among others, lack capacity to be sued: a county medical examiner's office, *Jeffery v. Dallas Cnty. Med. Exam'r*, 37 F. Supp. 2d 525, 528–29 (N.D. Tex. 1999); a county sheriff's department and its detention services bureau, *Magnett v. Dallas Cnty. Sheriff's Dep't*, No. 3-96-CV-3191-BD, 1998 WL 51355, at *1 (N.D. Tex. Jan. 20, 1998); and a county district attorney's office, *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996).  And a court within this district held that the Brazos County Juvenile Board was a subdivision or department of Brazos County and not independently subject to suit.  *McCoy-*

*Eddington v. Brazos Cnty.*, No. H-05-0395, 2007 WL 1217989, at *2 (S.D. Tex. Apr. 24, 2007).

The Court therefore concludes that the Brazoria County Juvenile Board does not have the capacity to sue or be sued given "the absence of statutory authority" granting it such capacity. *Elder*, 282 S.W.2d at 376. The legislature, which created the Juvenile Board, has granted the authority to sue or be sued for entities ranging from county boards of education, Tex. Educ. Code Ann. § 17.21(a)-App., to athletic stadium authorities, *id.* § 45.152(b), to the state bar, Tex. Gov't Code Ann. § 81.014, to zoo boards, Tex. Loc. Gov't Code Ann. § 327.161(a), to the Angleton-Danbury Hospital District of Brazoria County, Tex. Spec. Dists. Code Ann. § 1002.109, but *not* to the Brazoria County Juvenile Board or to juvenile boards generally. *See Tooke*, 197 S.W.3d at 347–55, 363–70 (listing dozens of Texas "sue and be sued" statutes). Its failure to grant the Juvenile Board the jural authority it has granted so many other entities is telling. *Cf. Whitfield v. United States*, 543 U.S. 209, 216 (2005) (noting that Congress's inclusion of a statutory element in 22 criminal statutes, but not the one under consideration, "clearly demonstrate[es] that it knows how to impose such a requirement when it wishes to do so").

Neither *Flores v. Cameron Cnty.*, 92 F.3d 258 (5th Cir. 1996), nor *El Paso Cnty. v. Solorzano*, 351 S.W.3d 577 (Tex. App.—El Paso, 2011, no pet.),

undermines the longstanding and frequently applied rule that statutory authority must vest a public entity with the capacity to sue or be sued.  Plaintiffs argue that the holding in *Flores*—that the Cameron County Juvenile Board is a local county agency rather than a state agency—stands for the proposition that the Board is not subject to state sovereign immunity and therefore has the capacity to be sued. Although the Fifth Circuit in *Flores* applied factors usually used in the context of determining Eleventh Amendment immunity, its inquiry was not whether the Cameron County Juvenile Board enjoyed state sovereign immunity or whether the board was a suable entity as determined by Texas law and required by Federal Rule 17(b).[1]   *Flores*, 92 F.3d at 264–65.  Rather, the Fifth Circuit sought to determine whether the Cameron County Juvenile Board was a state or local entity so that it could answer whether the board was a "policymaker[] for whose policies the County could be held liable" under 42 U.S.C. § 1983.  *Id.* at 262–63. Nevertheless, the Fifth Circuit's answer to that question—that the juvenile board was a "county agency rather than an arm of the state" and that the board "formulates policy for the detention center on behalf of [the county]," *id.* at 269— actually lends support to the view that the Brazoria County Juvenile Board does

---

[1] In fact, one of the factors used to determine whether the juvenile board was a state or local entity was "whether the entity has the authority to sue and be sued in its own name."  *Flores*, 92 F.3d at 265.  The Court did not provide an answer, noting that the statutory scheme did not provide clarity.  *Id.* at 267.

not enjoy a separate legal existence from the County and does not have the capacity to be sued.

Contrary to *Flores*, the Texas Court of Appeals ruled in *Solorzano* that the El Paso Juvenile Probation Department is a separate governmental entity apart from the county. *Solorzano*, 351 S.W.3d at 584. Plaintiffs argue that this separate existence found in *Solorzano* implies that the Board can be sued in its own name. But *Solorzano*'s determination that the two entities are separate was in the context of holding that El Paso County was not a proper party to a section 1983 claim aimed at the conduct of an El Paso Juvenile Probation Department employee. It did not opine on whether a juvenile board or juvenile probation department, which was not named as a party, is a suable entity. *Solorzano*, 351 S.W.3d at 577, 584. As discussed above, that capacity question turns on the existence of statutory authority to sue or be sued.

In any event, this Court is not convinced that *Solorzano*'s reasoning, even if relevant to the capacity question, is correct.[2] Numerous factors indicate that the Board is not separate from the County. A juvenile board is defined as "a body established by law to provide juvenile probation services *to a county*." Tex. Hum. Res. Code Ann. § 200.001(a)(6) (emphasis added). The Board's composition

---

[2] *Cf. Rx.Com Inc. v. Hartford Fire Ins. Co.*, 364 F. Supp. 2d 609, 613–14 (S.D. Tex. 2005) (noting that when the state supreme court has not spoken on an issue, federal courts may look to precedents established by intermediate state courts, but need not defer to such precedents if persuasive data convinces the court that the state supreme court would rule otherwise).

provides further evidence that it is a county entity: its members are the county district judges, the county court-at-law judges, and the county judge, who is also the "presiding officer" of the Brazoria County Commissioners Court. *See* Tex. Const. art. V, § 18(b); Tex. Hum. Res. Code Ann. § 152.0261(a); *see also Commissioners' Court*, State of Texas, County of Brazoria, http://www.brazoria-county.com/comcourt/ComCourtMemberInfo.asp (last visited August 30, 2012). Additionally, the Board's funding structure depicts the Board as a dependent county entity.  The Commissioners Court, which the County has referred to as its final policy maker, pays the Board members compensation at an amount set by that court.  Tex. Hum. Res. Code Ann. § 152.0261(b).  According to representations by counsel at the August 8, 2012 hearing before this Court, the County provides 75% of the Juvenile Board's overall funding.  Finally, as detailed in *Flores*, Chapter 142 of the Texas Human Resources Code and various opinions of the Texas Attorney General also suggest that juvenile boards are county entities.  92 F.3d at 265.  For example, section 142.002(a) of that Code establishes that juvenile boards may employ probation officers with the approval of the commissioners court, while Tex. Att'y Gen. Op. No. H-1133 (1978) recognizes a duty of the county attorney to represent and provide legal advice to the county juvenile board.  *Id.*

But regardless of *Solarzano*'s validity, what remains undisputed is that no legislation has vested the Juvenile Board with the jural authority that is required

before it can become a party to litigation. Because Texas law makes that the determinative question, the Brazoria County Juvenile Board does not have the capacity to be sued under Texas law as Federal Rule of Civil Procedure 17(b) requires.

## IV.   CONCLUSION

The Plaintiffs litigated this case for more than two years on the assumption that they did not need to name the Juvenile Board as a separate defendant in order to reach conduct attributable to the Board.   Careful lawyering understandably prompted them to change course based on *Solorzano*.   But for the reasons discussed above, that decision by the El Paso Court of Appeals does not change the legal landscape of this case.

The Court therefore **GRANTS** the Motion by the Juvenile Bd. of Brazoria Cnty. for Dismissal of Pls.' Compl. Under Rule 12(b)(6) of the Fed. R. of Civ. P. (Docket No. 131).

SIGNED this 10th day of September, 2012.

_____
Gregg Costa
United States District Judge