UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIANA COATES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:10-CV-00071 |
| | § | |
| BRAZORIA COUNTY TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In a December 11, 2012 Order, this Court granted in part and denied in part Defendant Brazoria County's motion for summary judgment on the section 1983 claim asserted against it. The County now seeks certification to file an interlocutory appeal challenging the portions of that ruling on which it did not prevail. Having reviewed the parties' briefing and the governing law on certification of interlocutory appeals, the Court **DENIES** the County's request because it fails to meet at least two of the statutory requirements for certification. First, an interlocutory appeal would delay, rather than materially advance, the ultimate termination of this litigation. Second, although the Order addresses complex questions of section 1983 law, the County does not identify the type of contrary authority that amounts to the "substantial grounds for a difference of opinion" required to depart from the ordinary rule against piecemeal appeals. Accordingly, the County's motion is **DENIED**.

## I.   BACKGROUND[1]

This is a Title VII and section 1983 case.  It arises out of allegations that James Blackstock, a former elected court-at-law judge for Brazoria County, sexually harassed and assaulted two Brazoria County Juvenile Probation Department employees while the County acquiesced and ultimately retaliated against those employees for blowing the whistle.  Plaintiffs originally sued Blackstock and the County.

### A.  First Round of Dispositive Motions

In January 2012, the County filed two separate motions for summary judgment—one regarding Plaintiffs' section 1983 claims, Docket Entry No. 69, and one regarding Plaintiffs' Title VII claims, Docket Entry No. 73.  Judge Hoyt "provisionally" denied the section 1983-related motion, noting that it "should be carried with the trial of the case."  Docket Entry No. 83.  Given that other procedures exist for obtaining judgment as a matter of law during trial, *see* Fed. R. Civ. P. 50, this effectively amounted to denial of the summary judgment motion. Yet the County did not seek an interlocutory appeal on the section 1983 issues raised in that motion—which are similar to those addressed in the recent Order—at

---

[1] More in-depth factual background is discussed in the Court's September 10, 2012 and December 11, 2012 opinions.  *See Coates v. Brazoria County*, -- F. Supp. 2d --, No. G-10-71, 2012 WL 3930314, at *1 (S.D. Tex. Sept. 10, 2012); *Coates v. Brazoria County*, No. 3-10-71, 2012 WL 6160678, at *1–3 (S.D. Tex. Dec. 11, 2012).

that much earlier stage in the litigation when any efficiency gains from an appeal would have been greater.

Judge Hoyt denied the Title VII-related motion outright.  Docket Entry No. 89.  Again, the County did not seek interlocutory review of that ruling.

## B. Second Round of Dispositive Motions

After obtaining leave from the Court, Plaintiffs amended their complaint on April 24, 2012 to add the Brazoria County Juvenile Board as a defendant.  On May 21, 2012, the Juvenile Board responded with a motion to dismiss, and the County reasserted its previously-raised arguments in a motion to dismiss or, alternatively, motion for summary judgment.  Three days later, the case was reassigned.  This Court dismissed the claims against the Juvenile Board, holding that the Board had not been vested with the statutory authority to sue or be sued.  *See Coates v. Brazoria County*, -- F. Supp. 2d --, No. G-10-71, 2012 WL 3930314, at *3 (S.D. Tex. Sept. 10, 2012).

After dismissing the Juvenile Board, the Court next addressed the County's motion.  The Plaintiffs' Title VII claims and section 1983 claims relating to the Juvenile Board's conduct survived that motion, but the section 1983 claims relating to the district attorney's conduct did not.[2]  *Coates v. Brazoria County*, No.

---

[2] The Court did not address the substance of the Title VII claims, but refused to grant summary judgment on them because Judge Hoyt had already considered and denied those same arguments in his February 29, 2012 Order.  *See Coates*, 2012 WL 6160678, at *1 n.1 (citing Docket Entry

3-10-71, 2012 WL 6160678, at *1 n.1, *11 (S.D. Tex. Dec. 11, 2012). Accordingly, at this stage of the litigation, Plaintiffs have claims pending against Blackstock under section 1983 and against the County under section 1983 and Title VII.  The County's instant motion only seeks to appeal this Court's treatment of the section 1983 claims against the County.  A brief explanation of those section 1983 claims follows.

### C.  The Remaining Section 1983 Claims Against the County

Plaintiffs advance two separate claims under section 1983.  First, they claim that the County violated the Fourteenth Amendment's guarantee of equal protection.  Specifically, they argue that the Juvenile Board's acquiescence to the "clear and persistent pattern of sexual harassment established a custom and practice of Brazoria County to allow sexual harassment of their employees by defendant Blackstock."  Docket Entry No. 129 ¶ 118.  Second, Plaintiffs claim that the County retaliated against them for engaging in constitutionally protected free speech by terminating them after they reported the harassment.

The County now seeks certification on three of the issues the Court addressed in its Order, which they characterize as "controlling questions of law":

- Whether the Juvenile Board is a county agency whose members can fairly be characterized as county officials;

---

Nos. 73; 89).  This Court's practice is to not reconsider Judge Hoyt's rulings in the hundreds of Galveston cases he was handling.

- Whether Texas law vests the Juvenile Board or the Commissioners Court with final policymaking authority to set the County's policies against sexual harassment and retaliation against juvenile probation department employees; and

- Whether the County may be held liable for alleged actions by the Juvenile Board in failing to prevent sexual harassment by an elected county court-at-law judge.

## II.   SECTION 1292(B) STANDARD

The procedure allowing certification of interlocutory appeals in limited circumstances injects an "element of flexibility into the technical rules of appellate jurisdiction established for final-judgment appeals under § 1291 and for interlocutory appeals under § 1292(a)."   16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012).   Section 1292(b) is intended to "minimize[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Id.*   But such appeals "represent a rarely used exception to the strong judicial policy disfavoring piecemeal appeals."   *In re L.L.P. & D. Marine, Inc.*, Civ. Nos. 97-1668, 97-2992, 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998) (citing *Clark–Dietz & Assoc. –Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1993)).

Certification of an interlocutory appeal under section 1292(b) is only appropriate when: (1) the order from which the appeal is taken involves a "controlling question of law"; (2) there is a "substantial ground for difference of

opinion" concerning the issue; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). The decision to permit such an appeal is within the district court's sound discretion.  *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).  Even if the district court certifies a section 1292(b) appeal, the court of appeals must determine that the certification requirements of the statute have been met.  *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc).  "The burden of demonstrating the necessity of an interlocutory appeal is on the moving party."  *L.L.P. & D. Marine*, 1998 WL 66100, at *1 (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)).

## III.   ANALYSIS

### A.  Materially Advance the Ultimate Termination of Litigation

The final statutory requirement, which focuses on whether the interlocutory appeal would promote efficiency, is fatal to the County's motion.  Indeed, the County devotes only one paragraph of its 24-page motion to arguing that an interlocutory appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  In evaluating this criterion, "a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly."  *Miramax Film Corp.*, 867 F. Supp. at 322

(citations omitted).  Discovery is complete so an appeal could not accomplish the third objective.

Nor would the appeal eliminate the need for a trial.  "The Fifth Circuit has held that certification is particularly inappropriate when a party has claims remaining for adjudication by the finder of fact."  *L.L.P. & D. Marine*, 1998 WL 66100, at *2 (citing *United States v. Bear Marine Servs., Inc.*, 696 F.2d 1117, 1120 (5th Cir. 1983); *Spurlin v. General Motors Corp.*, 426 F.2d 294, 294–95 (5th Cir. 1970)).  That is the case here and then some.  Even after an interlocutory appeal in which the County prevailed, another claim would remain pending against it, the section 1983 claim would remain pending against another defendant, and there would even be a remaining issue on the section 1983 claim alleged against the County that would have to wait for the second, postjudgment appeal.

Because the requested appeal does not implicate Plaintiffs' Title VII claims against the County and section 1983 claims against Blackstock, *see id.* (denying certification where issue was "not dispositive of any party's complete liability"), an interlocutory appeal—regardless of its outcome—would not obviate the need for a trial.  On the other hand, a trial could obviate the need for an appeal on these issues.  For instance, if a jury found that Plaintiffs' termination was not retaliatory or that the County lacked knowledge of a pattern of harassment, the Court's determination of what constitutes a "final policymaker" would be moot.

The interlocutory appeal would not even dispose of the section 1983 claim asserted against the County.  The Court granted part of the summary judgment motion the County filed, finding that the district attorney's prosecutorial decisions are not attributable to the County.  Plaintiffs will likely seek to review that ruling, especially if they are unsuccessful on their remaining claims at trial.  Allowing interlocutory appeal on one aspect of the section 1983 claim asserted against the County may thus result in the least efficient scenario of two appeals and two trials.[3]

Because the interlocutory appeal will not eliminate the need for trial on the other claims, the County would have to show that an appeal of the final policymaker issue would simplify or shorten the inevitable trial.  But Plaintiffs' Title VII claims against the County and the section 1983 claims asserted against Blackstock will presumably require much of the same evidence, examination, and argument as the section 1983 claims asserted against the County.

Certifying an interlocutory appeal would thus not eliminate or simplify the trial but serve only to delay it.  The age of this case heightens the consequences of that delay.  Of the more than 250 nonprisoner cases on this Court's civil docket, this one has been pending the longest.  As of the February 25, 2013 trial date that is fast approaching, this case will be approximately three years old.  As Plaintiffs

---

[3] In this scenario, the Fifth Circuit would rule in favor of the County on its interlocutory appeal. A trial would then take place with section 1983 claims against Blackstock and Title VII claims against the County, but no section 1983 claims relating to the district attorney.  Following trial, Plaintiffs would appeal the Court's decision relating to the district attorney, and, if reversed, a second trial would be required regarding the district attorney.

point out, recent statistics show that the median time for disposition of a Fifth Circuit appeal is eleven months.  *See* Docket Entry No. 169-1 at 7.  Delaying for another year the trial in which most of the key evidence is likely to be testimonial is not desirable.[4]

### B.  Substantial Ground for Difference of Opinion

Certification of an interlocutory appeal would be inappropriate for another reason: no "substantial ground for difference of opinion" exists regarding the issues of law underlying the Court's December 11, 2012 Order.  28 U.S.C. § 1292(b).  Of the three criteria, this one "has caused [courts] the least difficulty" and "judges have not been bashful about refusing to find substantial reason to question a ruling of law."  WRIGHT ET AL., *supra*, § 3930 at 492.  The threshold for establishing a "substantial ground for difference of opinion" is higher than mere disagreement or even the existence of some contrary authority.  *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006) ("[S]imply because a court is the first to rule on a question or counsel disagrees on applicable precedent

---

[4] The issue of whether an interlocutory appeal involves a controlling question of law is "closely tied" to the requirement that the appeal materially advance the ultimate termination of the litigation.  *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citations omitted).  Indeed, the Court could find that no controlling issues of law exist for the same reasons that it lists in Part III(A).  *See id.* ("[A]n issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings." (citations and internal quotation marks omitted)).  "Direct focus on the seemingly pragmatic requirement that immediate appeal may materially advance the outcome may be more helpful, however, than wrestling with the more abstract 'controlling question of law' requirement."  WRIGHT ET AL., *supra*, § 3930 at 507.

does not qualify the issue as one over which there is substantial disagreement." (citation omitted)).

Courts traditionally will find a substantial ground for difference of opinion "if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."  4 Am. Jur. 2d *Appellate Review* § 123 (2012) (citations omitted); *see also, e.g.*, *Gonzalez v. Seal*, -- F.3d --, No. 11-31068, 2012 WL 6176482, at *2 (5th Cir. Dec. 12, 2012) (permitting appeal on issue of whether Fifth Circuit precedent survived a conflicting Supreme Court decision); *Fisher v. Halliburton*, 667 F.3d 602, 613–14 (5th Cir. 2012) (permitting appeal on issue of first impression under the Defense Base Act in which all relevant case law came from courts in other jurisdictions interpreting parallel statutes); *Luera v. The M/V Alberta*, No. 4:07-cv-02698, Docket Entry No. 172 (S.D. Tex. Aug. 6, 2009) (certifying appeal when Fifth Circuit precedent was factually distinguishable but had been interpreted by another circuit and district court as applicable).  As discussed below, that requisite level of disagreement does not exist for any of the three issues on which the County seeks certification.

### 1. Whether the Juvenile Board is a County Agency

The Court's December 11, 2012 Order recognized that the "Juvenile Board can only be a relevant policymaker for Brazoria County if it is a county agency rather than a state agency with a separate and independent existence." *Coates*, 2012 WL 6160678, at *5. The Court concluded that the Juvenile Board acts as a county agency, relying heavily on *Flores v. Cameron County*, 92 F.3d 258, 264–69 (5th Cir. 1996), which held that the Cameron County Juvenile Board formulates policy for the Cameron County Juvenile Detention Center on behalf of Cameron County.[5]

The County argues that the Court's determination of this issue is based on a "false dichotomy" that a juvenile board must be either a state or county agency. It cites two recent Texas Court of Appeals decisions from El Paso, as well as a Texas Attorney General opinion, for support that a juvenile board is a "specialized local entity," which exists separately from the county it serves. But such authority—even if adverse—does not qualify as a *substantial* ground for difference opinion with this Court's decision or the *Flores* ruling on which it was based.

The tension between this Court's Order and the two recent Texas appellate decisions from El Paso, *see El Paso Juvenile Bd. v. Aguilar*, -- S.W.3d --, No. 08-

---

[5] The Court undertook this inquiry as a part of the "final policymaker" question even though the County did not argue in its summary judgment motion that the Juvenile Board's status as an independent entity was a basis for dismissal. The County merely noted in the factual section of its brief that a juvenile board is separate from a county and cited one of the El Paso cases in a footnote. *See* Docket Entry No. 133 at 4, n.18.

11-00206-CV, 2012 WL 1611899 (Tex. App.—El Paso May 9, 2012, no pet.); *El Paso County v. Solorzano*, 351 S.W.3d 577 (Tex. App.—El Paso, 2011, no pet.), is hardly comparable to the traditional grounds for certification under section 1292(b) in which a trial court rules contrary to all circuit courts; a question of first impression is presented on which other circuit courts are split; or complicated questions arise under foreign law.  *See* 4 Am. Jur. 2d *Appellate Review* § 123 (2012) (citations omitted).

And while the "county or not" inquiry is determined by state law, rulings by a single intermediate state appellate court do not override an earlier federal court of appeals deciding the same question of state law.  As the Fifth Circuit stated in *F.D.I.C. v. Abraham*:

> [W]hen our *Erie* analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit, and neither a clearly contrary subsequent holding of the highest court of the state nor a subsequent statutory authority, squarely on point, is available for guidance, we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several—preferably a majority—of the intermediate appellate courts of the state in question.

137 F.3d 264, 269 (5th Cir. 1998).  The view of one of the fourteen Texas Court of Appeals does not "come close to a 'majority.'"  *PYR Energy Corp. v. Samson Res. Co.*, 470 F. Supp. 2d 709, 725 (E.D. Tex. 2007).  Accordingly, the El Paso cases

do not provide this court or the Fifth Circuit with the authority to overrule *Flores* and thus do not establish "substantial disagreement" on this question.

Nor does the Texas Attorney General Opinion the County cites. *See* Tex. Att'y Gen. Op. No. JC-0209 (April 12, 2000). To the contrary, multiple courts have ruled that such opinions do not establish a basis for interlocutory appeal. *See Lucas v. Bell Trans*, No. 2:08-cv-01792-RCJ-RJJ, 2009 WL 3336112, at *4 (D. Nev. Oct. 14, 2009) (finding that plaintiffs' citation to the "Nevada Attorney General's non-authoritative opinion, the reasoning of which the Court ha[d] already attacked in its Order," did not demonstrate a substantial ground for difference of opinion (internal citation omitted)); *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (finding no substantial ground for difference of opinion based on an advisory opinion from a division of the attorney general's office). The County cites no cases, and the Court is aware of none, in which an attorney general opinion served as the basis for a section 1292(b) certification. This makes sense given that attorney general opinions "are not binding on the judiciary."[6] *Jones v. Williams*, 45 S.W.2d 130, 131 (Tex. 1931).

---

[6] The County also argues that on-point statutory authority is available for guidance. Specifically, it argues that a juvenile board cannot be a county agency because Texas Local Government Code section 140.003(a)(2) defines a "specialized local entity" as, among other things, "a juvenile board, juvenile probation office, or juvenile department established for one or more counties." Tex. Loc. Gov't Code Ann. § 140.003(a)(2). But the statute cannot preclude a juvenile board from being a section 1983 policymaker for a county or the state given that the statute also defines a specialized local entity as "a district or criminal district attorney," despite the fact that countless opinions have found district attorneys to be the final policymaker of a county or the

Even if the decisions of one intermediate state appellate court and an Attorney General opinion were the types of authorities that could prompt reconsideration of Fifth Circuit precedent, their reasoning does not cast doubt on *Flores*'s thorough analysis.   The Texas Attorney General opinion cited by the County focuses more on a juvenile board's independence from its county's commissioners court than a juvenile board's authority to act on behalf of a county. *See* Tex. Att'y Gen. Op. No. JC-0209 (addressing a juvenile board's authority to retain counsel in action brought against it by its county's commissioners court).[7] And the *Aguilar* decision—which sought to determine whether the El Paso County Juvenile Board was a "political subdivision of the state for purposes of Chapter 504 of the Labor Code"— recognized that "a juvenile board's employees are considered to be county employees because they are paid and their benefits are provided by the county."   *Aguilar*, 2012 WL 1611899, at *3 (citing Tex. Hum. Res. Code Ann. § 222.006).

state for section 1983 purposes.  Tex. Loc. Gov't Code Ann. § 140.003(a)(2); *see Coates*, 2012 WL 6160678, at *8–9.

Additionally, as Plaintiffs point out, under the County's interpretation, specialized local entities would enjoy "super immunity," acting as neither a state nor county entity, nor as a subordinate entity with the authority to sue or be sued.  Docket Entry No. 169 at 13.  The creation of this "no man's land" for liability further demonstrates the flaws in the County's position.

[7] This Court acknowledged that independence in determining that the Brazoria County Juvenile Board, as opposed to the Commissioners Court, acts as a final policymaker for the County with respect to personnel policies and decisions related to the juvenile probation department.  *See Coates*, 2012 WL 6160678, at *6–8.

For these reasons, there is no substantial ground for difference of opinion on the question whether a juvenile board may act as a county agency for section 1983 purposes.

### 2. *Whether the Juvenile Board is a Final Policymaker*

The County also seeks interlocutory appeal of the Court's determination that the Juvenile Board, rather than the Brazoria County Commissioners Court, has final policymaking authority regarding personnel policies and decisions related to the juvenile probation department. Specifically, it argues that the Court's ruling (1) misapplied *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998); and (2) contradicts the magistrate court's memorandum and recommendation in *Turay v. Harris County*, No. H-09-0193, 2011 WL 841510 (S.D. Tex. Feb. 17, 2011), *adopted*, 2011 WL 843902 (S.D. Tex. Mar. 7, 2011).

With respect to the Court's application of *Brady*, there is no "question of law" for which substantial ground for difference of opinion exists. "[A] 'question of law' does *not* mean the application of settled law to disputed facts." *Ryan*, 444 F. Supp. 2d at 722 (emphasis in original) (citing *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)). The County attempts to attack the factual underpinnings of the Court's ruling by noting that Plaintiffs signed forms acknowledging their obligation to comply with the personnel policies created by the Commissioners Court and citing to related deposition testimony. But

"resolving the issue presented should not require the appeals court to go 'hunting through the record' to see whether 'a genuine issue of material fact may be lurking there.'"  *Id.* (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)).

Regardless of whether the issue is a general question of law on which certification is appropriate, the Court's application of *Brady* does not, as the County states, "give[] short shrift to the 'special' characteristics of Texas sheriffs and elevate[] an administrative regulation over [a] contrary Texas Constitutional provision."   Docket Entry No. 168 at 12.   *Brady* is merely illustrative of the principle that a court must decide whether an entity is a final policymaker for the local government "in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) (citations omitted).   Even though commissioners courts have broad authority over county business, *see* Tex. Const. art. V, § 18(b), juvenile boards have specific authority over juvenile probation department personnel policies.   Not only does the Texas Administrative Code specify that juvenile boards "shall adopt written personnel policies" and "shall specify the responsibilities and functions of the juvenile probation department," but the Texas legislature has also vested juvenile boards with authority to employ necessary personnel.   37 Tex. Admin. Code §§ 341.3(a); 341.2(a)(2); Tex. Hum. Res. Code. Ann. § 142.002(a).   The Brazoria County Juvenile Board has its own

manual of policies and procedures.  The fact that it chooses to follow the personnel policies drafted by the Commissioners Court—as it could choose to follow the personnel policies of another county, such as Matagorda, or even a private company—is inconsequential.

Second, the ruling in *Turay*—that the Harris County Juvenile Probation Department Board is not a final policymaker for Harris County regarding employment procedures—does not establish a substantial ground for difference of opinion.  *See Turay*, 2011 WL 841510, at *9.  Neither the plaintiff nor the magistrate court's unpublished opinion in *Turay* considered the Texas statutes, Texas administrative rules, and Fifth Circuit precedent on which this issue turns and on which the Court's Order relies.  *Id.*; Plaintiffs Hawa Turay, Deborah Brown, and Wonda Thomas' Response to Defendant's Motion for Summary Judgment, *Turay v. Harris County*, Case No. 4:09-cv-193, Docket Entry No. 2 (S.D. Tex. May 7, 2010).  The *Turay* decision stemmed solely from the testimony of the head of the Harris County Juvenile Probation Department that "[w]ith regard to employment procedures, the Juvenile Board has adopted Harris County's policies," *Turay*, 2011 WL 841510, at *9 (alteration in original), and did not recognize the key consideration that a juvenile board has the legal authority to adopt whichever procedures it deems best.

17 / 19

As with its first issue, on this question the County fails to identify the requisite level of disagreement in the case law.

### 3. Whether Failing to Prevent Illegal Employment Practices Can Create Section 1983 Liability

Lastly, the County argues that allowing it to be held liable for failing to prevent Blackstock's sexual harassment "appears inconsistent with Supreme Court and Fifth Circuit precedent." Docket Entry No. 168 at 22 (capitalization altered). But the County only cites to cases stating that governmental liability under section 1983 cannot be predicated on the doctrine of agency or *respondeat superior*—a point the challenged Order explicitly acknowledges. *See Coates*, 2012 WL 6160678, at *4 ("[T]he doctrine of *respondeat superior* does not apply to section 1983 liability; a local government may not be held liable merely for employing a tortfeasor." (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010)). That established principle is not inconsistent with the Court's holding that section 1983 liability may attach to the Juvenile Board's alleged deliberate indifference toward Blackstock's harassment—as opposed to Blackstock's harassment in and of itself. Accordingly, the Court finds no substantial ground for difference of opinion with respect to this issue.

## IV.  CONCLUSION

The County has not provided this Court with a reason to depart from the general rule of appellate jurisdiction, which restricts review to final judgments in

order to avoid the delay of piecemeal appeals.  Because an interlocutory appeal in this case would result in that delay without achieving attendant efficiency gains, it would not materially advance the termination of this case.  And the County does not identify disagreement on the contested legal issues at the federal appellate level which is typically the basis for certifying interlocutory appeals.   Therefore, the Court **DENIES** Brazoria County's Motion for Certification and Amendment of Order Under 28 U.S.C. § 1292(b) (Docket Entry No. 168).

SIGNED this 28th day of January, 2013.

_____
Gregg Costa
United States District Judge