IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIANA COATES and | § | |
| MARGO GREEN, | § | |
|     *Plaintiffs* | § | |
| | § | |
| vs. | § | C.A. No. 3:10-CV-71 |
| | § | |
| BRAZORIA COUNTY, and | § | |
| JAMES BLACKSTOCK, | § | **JURY TRIAL DEMANDED** |
|     *Defendants* | § | |

## PLAINTIFFS' EMERGENCY MOTION
## FOR ENFORCEMENT OF JUDGMENT AND REQUEST FOR COSTS

Because a check tendered to pay Judgment in this case was so poorly written by Defendant's insurer, its own bank believed it fraudulent and stopped payment. Disastrously, this halt occurred *after* funds had been disbursed from Plaintiffs' attorneys' Trust Account and a chain reaction, domino, and ricochet effect of bounced checks has been unleashed between and among several banks. The maker of this bad check has refused to take simple action to fix its mistake. Plaintiffs' seek the courts immediate attention and emergency action to avert further disaster.

## CHAIN OF EVENTS

On February 20, 2013, this Court entered judgment against Brazoria County, ordering that Plaintiffs each recover $425,000.00. [Exhibits A & B]

After extensive discussions between counsel as to how the checks were to be made, on March 4, 2013, Defendant delivered checks to Plaintiffs' counsel, as

follows:

1) Check from Brazoria County to Diana Coates and Jacqueline Armstrong's Trust Account ("IOLTA") at IBERIA Bank for $175,000.00.

2) Check from Illinois National Insurance Co. (AIG) to Diana Coates and Jacqueline Armstrong's IOLTA for $250,000.00.

3) Check from Brazoria County to Margo Green and Jacqueline Armstrong's IOLTA for $175,000.00.

4) Check from AIG to Margo Green and Jacqueline Armstrong's IOLTA for $250,000.00.

The checks to Ms. Coates are attached as Exhibit C. The checks to Ms. Green are attached as Exhibit D.

On March 7, 2013, IBERIA Bank confirmed the promise to pay these amounts with the makers of the checks, Brazoria County and AIG (through Illinois National Insurance Co.). Upon that confirmation, IBERIA Bank notified Plaintiffs' counsel, Ms. Armstrong, that funds were available. Acting in reliance upon those same confirmations, Ms. Armstrong disbursed funds to her clients, the Plaintiffs, who in turn negotiated their checks. Ms. Armstrong also disbursed funds to her operating account at Wells Fargo Bank which in turn, made those funds available on Friday March 8th. That day, funds were also disbursed to Mr. Thomas Padgett, Mr. Iain Simpson, expert witnesses, consultants, and others. Those checks were deposited that

day or Saturday March 9th.  Recipients of these funds then also made payments on their accounts.

On Monday, March 11th, AIG's bank, JPMORGAN CHASE, contacted the Ms. Armstrong's IOLTA bank, IBERIA, and gave notice that it considered the check to Ms. Coates and Ms. Armstrong's IOLTA to have been fraudulently made. Examination of the check, on Exhibit C, showed that Ms. Armstrong's last name was misspelled and line adjusted after the "A" of her last name.  Curiously, CHASE had no problem paying the next sequentially numbered check for the same amount, for the same claim and policy number, to Ms. Green and Ms. Armstrong.  Nonetheless, Ms. Armstrong received a call from IBERIA Bank the morning of March 11th to deposit or wire funds to cover $250,000.00, within an hour, by 10am that morning.  Ms. Armstrong does not have $250,000.00.  Checks have been bouncing since.  See Letter from Iberia Bank, attached as Exhibit E.

Further investigation and inquiries made that day by Ms. Armstrong and her banker at IBERIA discovered the following: AIG has its bank, CHASE, employ a process known as the "Positive Pay System" which scans checks drawn on AIG accounts for defects.  CHASE pulls the check out of the line for payment and contacts the department from which it issued.  Without confirmation, the check is not paid and investigation to identify the fraud is initiated.

In this instance, CHASE pulled the check, presented it to AIG, and AIG declined to approve the payment on March 11th, despite having verbally confirmed its promise to pay through IBERIA Bank on March 7th. IBERIA indicated that a wire transfer or check received by March 12th would avert disaster. Ms. Armstrong communicated this to counsel for Brazoria County, who in turn communicated to AIG's Claim Analyst, Brooke Gartner, who has followed this case from its initial claim and conciliation efforts at the EEOC in 2010. The response, attached as Exhibit F, read as follows:

> *"Dear Barry, I was just sending you the same confirmation email. I just submitted to our financial department a "stop pay request" on check #23148338. As soon as the request goes through the money should be credited back to our claim file. At that time, I can reissue the check and will mail it overnight to the attention of Jacqueline a. Armstrong. I will copy you both when the check is reissued. I sincerely apologize for any inconvenience.*
> *Regards,*
> *Brooke Gartner*
> *AIG"*

A delay of days for AIG's check to make its way back through these choppy seas of commerce to its financial department and then days more for a check to be reissued is wholly unacceptable. Ms. Armstrong immediately went to a branch of CHASE (where she also has an account) and her branch manager placed calls to senior management of CHASE in New York. Because the fix was so simple, AIG's

verbal approval to release the funds, CHASE persisted in its refusal to believe that the check was NOT fraudulently made, deferring to its customer, AIG.

Communication with counsel for Brazoria County obtained a promise to have the check processed and sent for overnight delivery to arrive Friday morning prior to 10am. See email communication between counsel for the County, Ms. Armstrong and AIG representatives, attached as Exhibit G.  IBERIA had explained that a check deposited by 10am Friday could avert the disaster.

On this Friday morning, Ms. Armstrong sought confirmation and details as to what time the check would arrive.   See Exhibit H, which is email between Ms. Armstrong and Brazoria County's attorney, Barry Abrams, which reads:

> *"Barry, did you receive confirmation from AIG that the check had been processed and sent for overnight delivery? Do you know what time by which it was to be delivered? My receptionist doesn't arrive until 8:15a. Jackie"*
>
> *"Jackie - Per AIG, the replacement check is still being processed. I will update you when I have additional information. -Barry."*

## CONCLUSION

Today, March 15th, IBERIA bank once again pleaded with Ms. Armstrong to deposit $250,000 to cover the checks being presented because the tangles between banks are compounding at this point. Because of AIG's failure to take simple action regarding this one check, nearly $530,000.00 in transactions is ricocheting through

more than seven banks throughout the United States. Now Ms. Armstrong's personal accounts with Wells Fargo have been frozen as a result of this fiasco. In addition, Plaintiffs counsel has consulted with several colleagues in the insurance defense practice and all have assured her that insurance companies have the ability to issue cashiers' checks for sums as large as $250,000 and can wire funds in emergency situations. Clearly, AIG has no interest in paying this money. In fact, AIG has financial interest in dragging this out as long as they can.

While action may be taken against AIG at a later date, a remedy is required immediately. Plaintiffs request that defendant Brazoria County be ordered to pay $250,000.00 to Ms. Armstrong's IOLTA account immediately by either delivering a check made payable to Ms. Armstrong at her office by 4pm March 15, 2013, or by wiring that amount to her account at IBERIA this same day.

Brazoria County has been made aware of their insurer's conduct through counsel, Barry Abrams. Brazoria County, while not the party refusing payment, has influence with its insurer and has failed to do anything to assist with or avert this fiasco. Moreover, the judgment in this case is against Brazoria County, and the debt owed is Brazoria County's debt. Plaintiffs have no interest and no concern as to the source of the funds; they simply wish them paid as promised and as required.

Therefore, Plaintiffs request that the attorneys fees incurred in addressing this

matter be paid by the County.   Plaintiffs counsel has spent 80% of her time since Monday, totaling 20 hours, addressing this chaos.  See Ms. Armstrong's Affidavit attached as Exhibit I.  Attorneys Tom Padgett and Iain Simpson have collectively spent five hours performing legal research on this matter. Their billing rate is also $450.  Plaintiffs request that the County also send a check or wire Ms. Armstrong's IOLTA the amount of $11,250.00 for fees incurred. AIG would certainly have a fiduciary duty to cover all consequences of its recklessness and negligence.

Finally, post-judgment interest is running on this outstanding $250,000.00 at the rate of .15%.  As of Friday, March 13, 2013, the amount owed in post-judgment interest is $138.22. Plaintiffs ask an award of this amount in its order.

Plaintiffs plead for emergency and immediate action by this court.

Respectfully submitted,

_/s/ *Jacqueline Armstrong*_____
Jacqueline A. Armstrong
Texas Bar No. 15405420
SDTX Admission No. 10740
11111 Katy Freeway, Suite 910
Houston, Texas 77079
Tel:  (713) 973-5711
Fax: (713) 973-7510

ATTORNEY-IN-CHARGE
FOR PLAINTIFFS COATES AND GREEN

## CERTIFICATE OF SERVICE

I hereby certify that opposing counsel was served with Plaintiffs' Emergency Motion for Enforcement of Judgment and for Costs, this 15th day of March, 2013, via the court's ECF system:

__/s/__*Jacqueline A. Armstrong*_____
Jacqueline A. Armstrong

## CERTIFICATE OF CONFERENCE

On March 11th, March 12th March 13th, and March 15th counsel for Brazoria County Barry Abrams and I have communicated to resolve the issues addressed in this motion. We have been unable to do so though Mr. Abrams has been doing all he can to speed the process. This motion has become necessary.

_/s/ *Jacqueline A. Armstrong*___
Jacqueline A. Armstrong